LA. BUILDING & CONTRACTING CO.,

VS

**7303**

NO. 7303.

MR. & MRS. ADRIAN HAVA

CHARLES F. CLAIBORNE, JUDGE.

May 6th. 1918.

133

 

CHARLES F. CLAIBORNE, JUDGE.

This is a suit against husband and wife to recover against them, in solido, the value of labor and materials furnished by plaintiff in erecting a building and making repairs upon the property of the wife under a contract with the husband.

The defense is the contract was made with the husband alone and that the building was erected without the consent of the wife as owner.

The plaintiff alleged that it made a verbal agreement with Adrian Hava and his wife Ernestine Chavigny to do certain repairs and alterations to the property No. 1459 Annunciation Street, owned in common by both defendants, for the actual price of the work and a commission upon the price thereof; that in accordance with said contract it furnished labor and materials to the value of $1557.89, on which a commission of eleven per cent or $171.36 was due to him; that he has received $1156.14 in part payment, leaving a balance due to him of $573.11 for which he claims judgment in solido against both defendants with builder's privilege on the property.

The defendant Adrian Hava filed no defense. A default was entered against him.

Mrs. Hava filed a general denial. She specially averred that the property No. 1459 was her paraphernal property in which Mr. Hava had no interest; and she specially denied having made the agreement alleged in the petition, or that plaintiff had a privilege on her property; and she averred that if her husband had made any agreement with the plaintiff that she could not be made liable for the same.

In a supplemental answer she averred that plaintiff had maliciously recorded an affidavit to create a privilege on her

134

property to which he was not entitled by reason of which she *because it was recorded more than seven days after the work was completed*

claimed $500.00 in damages.

The District Judge rejected plaintiff's demand against both defendants. His judgment in favor of Mr. Hava was evidently an oversight.

His reasons for judgment were as follows:

"It appears that the defendant (Mr. Hava) engaged the plaintiff to erect a three story brick building on the rear end of the property which was the separate property of the wife and in which she resided. There is serious doubt in my mind whether this building was erected with the consent of the wife; but there is no doubt, for the sole use and benefit of the husband and for his purposes. He incurred the debt and now awaits a judgment whereby his wife's interest may be divested by sale or otherwise.

The wife could not have made herself liable for his debts by any process surreptitiously by borrowing the money after swearing that it was not for the use of the husband. This, she certainly has not done, and I know ~~that~~ no law which permits her private estate to be held liable without authorization by the Court and a false statement by her to the Judge authorizing either a mortgage or the creation of a lien. Things cannot be done indirectly when the obligation must arise from ~~thm~~ following the forms at the very least. The plaintiff may be entitled to a lien and privilege on the building; but not on the ground belonging to the wife of his debtor. Suit dismissed".

It is thus evident that there were three reasons upon which the Judge rested his conclusions: First, a suspicion that the defendant husband Hava, incurred this debt with a view of shifting the burden of paying it upon his wife, and eventually of bringing on against her a judgment which she would not be able to pay and by which her property would be sold and her interest therein divested. He evidently had in his mind the suit of Altringer vs Hava & wife. 11 Ct. App. 229, in which a creditor of Dr. Hava for $132.32 seized the same property No. 1459 Constance Street as his property when the same District Judge and this Court decided that Mrs. Hava was the owner of the property. Be that as it may the plaintiff must not be made the victim of

any proceedings to which he was not a party, ~~and~~ *while* there is neither allegation$ nor proof that he was in collusion with the Doctor to defraud his wife.

Second, that the building was erected "for the sole use and benefit of the husband and for his purposes".

We do not think that the principle evoked and contained in Article 2398 (2412) of the Civil Code applies here. It reads as follows:

"The wife whether separated in property by contract or by judgment, or not separated, cannot bind herself for her husband nor conjointly with him, for debts contracted by him before or during the marriage."

This article has been interpreted to apply to cases where the debt inured to the benefit of the husband and not *of* the wife. It cannot be said that improvements upon the separate property of the wife did not inure to her benefit, even though the improvements were erected for the benefit of the husband or of the family. Thus a wife, owner of a lot in her own right, would be bound to pay for a house built upon it for a residence for herself and husband, or to rent for the benefit of the community. In that case the immediate benefit would be to the wife and only the indirect benefit would in¢ure to the husband or the community.

The law upon this subject is contained in the following decisions.

In Patterson vs Frazer & wife 8A 512 the facts were as follows: Mrs. Frazer owned a plantation; her husband cultivated it; he procured money-advances from plaintiffs for the purchase of building materials which were used in erecting a sugar-house and other permanent improvements upon the plantation of the wife; the correspondence, purchase, and shipments were all with and for the husband; the plaintiffs contracted with him alone. The Court said:

"In Dickerman vs Reagan 2A 440 this Court decided that "the separate property of a married woman is liable for debts contracted during marriage for her individual use, or for the improvement of her separate property, or for marriage charges, which she is bound by law to bear, though the debt was created while her

136

paraphernal property was under the administration of her husband and during the existence of the community of acquets and gains". A married woman cannot, by surrending to her husband the partial or entire administration of her paraphernal property exonerate herself from liability for debts incurred for her individual use, or for the purpose of rendering that property productive."

In Dailey vs Pierson & wife 5A 125 this Court held the same doctrine. We still adhere to these opinions."

Judgment was accordingly rendered against the wife.

In the Succession of Penny 14A 194 the case is thus stated by the Court:

"Knapp furnished a sugar-mill, saw-mill and steam engine and Bowman & Gair erected the buildings to contain the same. This work was done r. the request of Albert G. Penny, and during the existence of the community between himself and the deceased Sarah Ann Penny, but upon a tract of land which was the separate property of Mrs. Penny. x x x The administrators of Mrs. Penny's Succession resist the payment of these claims on the ground that they are debts of the community. The opposers maintained that Mrs. Penny's estate is liable, because her separate property was enhanced in value by the sugar-mill and saw-mill erected upon the same. x x x

" But the cases of Dickerman vs Reagan 2A 440 Dailey vs Pearson 5A 125 and Patterson vs Frazer 8A 512 have gone further and are understood to establish the doctrine that the wife is liable for all debts incurred for the improvement of her separate estate, advances made for the payment of such debts and supplies of necessaries for a plantation which is the paraphernal property of the wife; whether the wife retained in her own hands the administration of her paraphernal estate or entrusted it to her husband according to these latter authorities the appellants Knapp and Bowman & Gair are entitled to recover of Mrs. Penny's estate." Affirmed in 51A 1069 (1073) Also 28A 298.

It was decided in Jordan vs Anderson 29A 749 that a brick building erected upon a lot of ground belonging to the wife is an improvement which inures to her benefit.

187

It must be noticed that in the above cases, it does not appear that either Mrs. Frazer or Mrs. Penick resided upon the plantation upon which the improvements were erected, or that they were aware that the improvemer. s were going up, or that they consented to them. The cases were decided upon the fact that the plantations belonged to the wives and were administered by their husband, and the presumption that the wives consented to the improvements as they were going up, and that they kept them and were benefited by them. The decisions might have been in favor of the wives had it been established that the wives had objected to the buildings prior to and during their construction. It has been held that one who intrudes his services upon another against his will and in the face of his protest cannot recover, although his services have been beneficial to that other. Piron vs Bach 10A 13 (15)-26A 504, Milligan vs Kenny 34A 50.

This case therefore turns upon the third point in the District Judge's mind, whether Mrs. Hava was aware that her husband had contracted for the erection of the building, and whether by her silence she acquiesced in the erection of it, or on the contrary, whether she was unwilling to have the building erected and so expressed herself to the plaintiff and ordered him to desist.

It is admitted that the defendants, husband and wife, both lived upon the premises No. 1459 Annunciation Street, prior to and during the time the plaintiff was putting up the building, and that the wife was aware from start to finish that the building was going up. We think that the evidence establishes that plaintiff contracted with defendant Doctor Hava alone.

Mrs. Hava testified that in the place occupied by the new building there was a new two story frame building erected some two years before which she did not want touched; that she forbade Gazin, plaintiff's manager, to put up anything, that her husband wanted the frame building torn down so that he might erect a brick building for his own work; that Gazin would not charge him anything as the Doctor was his physician treating Gazin; that she objected because the frame building was new and.

138

the new building would "take the sum out of the yard and it would take money out too"; that she tried to put Gazin and the workmen out of the yard and they gave her some impertinent answer; that both Dr. Hava and Mr. Gazin knew that she was opposed to putting up the building; that Dr. Hava left her about October 1915 and went to live in Waveland; she had gone to live with her people about two years before.

It would have been in the power of Mrs. Hava to have made her testimony more certain and reliable, had she written to Gazin or called in witnesses to hear her protests and corroborate her &p in some other manner. We think under the circumstances that the burden of proof was upon her. If she can avoid liability by her single testimony that she protested, then indeed is the plaintiff, and/any other contractor under like circumstances, at the mercy of the wife. And yet it is the experience of us all that, in most cases, it is the husband living with his wife in her property who generally makes the contracts for repairs and improvements to it. The presence and silence of the wife are presumed to ratify the husband's acts; and if she objects, the burden of proof is upon her to establish that she communicated her objections to the contractor.

Mr. Gazin testifies that he made the contract originally with Dr. Hava; there was, no price fixed, it was to be determined upon the amount of the work done and eleven per cent for his

| | |
|---|---|
| commission; the work done amounted to | $ 1557.89 |
| and his commission to | $ 171.36 |
| Making a total of | $ 1729.25 |
| Upon which Dr. Hava paid him | $ 1156.14 |
| Leaving a balance due of | $ 573.11 |

He says the work on the building was begun on May 3rd. 1913 and completed on August 1st. 1913; the plastering and gallery of the front house were also repaired and old wooden front steps replaced by granite steps at a cost of about $135.00 included in the charge of $1557.89; Mrs. Hava was present during the early discussions concerning the laying off of the building and establishing the line of division from the neighbor; also whether the building should be two or three stories high; during the

process of the work she made suggestions and gave orders; it was under her instructions that two fire-places were built in the upper stories, as the Doctor needed only one for his work; she gave directions concerning the steps and the plastering; the frame house which was demolished was an old carriage house with rotten studs and weather boards, no sills, nor floors, and leaning over on the neighbor's line about two feet; most of the old lumber was cut up and burned by Mrs. Hava; Mrs. Hava said sne was glad the old shack was coming down; she never told him, nor any of his laborers not to come in the yard, nor ordered him off, and never had any disagreement with *him* during the progress of the work; he owed Dr. Hava nothing for medical treatment.

Dr. Hava substantially corroborates the testimony of Gazin. He says he administered the property from the date of purchase, paid the taxes upon it, when they were paid, and also the insurance; when the property was first bought it was rented and he collected the rents; his wife agreed to the erection of the building; she had the ground surveyed.

The weight of evidence is clearly with the plaintiff. Nor is there any reason to suspect any collusion between Dr. Hava and Gazin.

The building and repairs were completed since August 1913; they cost $1557.89 of which the Docotr paid $1156.14, the last payment being made in August 1913; the plaintiff recorded his claim only in February 1917 and filed this suit only in January 1918. If this building had been erected by Docotr Hava with a view of leading up to a judgment and execution against his wife, it seems that he would not have made such a large payments himself nor waited so long to consummate his scheme.

Mrs. Hava protests that a judgment against her would make her a victim.

This is only possible, but not probable, as, by paying $573.11 she will get a building that cost $1557.89. But a judgment against Gazin would surely make a victim of him. Between the two, we have come to the conclusion that the law and the evidence incline the scales of justice towards the plaintiff and

that it is entitled to a judgment in solido against both defendants. 29A 751 (753)

But plaintiff is not entitled to a privilege, because the work he undertook exceeded in value $500.00, and his contract was not reduced to writing. Article 2775 (2746) of the Civil Code provides: "No agreement or undertaking for work exceeding $500.00, which has not been reduced to writing, and registered with the recorder of mortgages, shall enjoy the privilege above granted."

This Article has been interpreted and applied by our Supreme Court from 1822 to 1913 in the sense that the "writing" is of the "very essence" of the privilege.

See 11 M 437; 6 N. S. 169;473; 2 La. 93; 5 La 94; 15La. 384; 16 La. 292; 1OR 158; 2A 174; 175; 549; 4A 122; 5A 334; 432; 6A 63; 64; 480; 481; 10A 429; 12A 183; 227; 228; 521; 15A 51; 16A 305; 306; 19A 446; 20A 485; 24A 610; 28A 290; 305; 33A 973; 48A 760; 133 La. 697.

But the fact that the plaintiff recorded an attested account of his claim against the defendants does not entitle them to damages against the plaintiff in the absence of proof that they suffered any. 16A 151; 21A 185; 51A 1023; 107 La 587.

It is therefore ordered that the judgment appealed from be reversed and set aside and it is now ordered that there be judgment in favor of the plaintiff the Louisiana Building and Contracting Company and against the defendants Ernestine Chavigny wife of Adrian Hava and Adrian Hava, in solido, for the sum of Five Hundred and seventy-three 11/100 Dollars with five per cent per annum interest from September 4th. 1914 till paid and all costs of suit.

May 6th. 1918.